■ AMELIA M. REYES et al., Respondents, v BALDO V. BERTOCCHI, Appellant, et al., Defendants. — In an action to recover damages for personal injuries, etc., based on medical malpractice, breach of warranty and strict products liability, defendant Bertocchi appeals from an order of the Supreme Court, Kings County (Greenstein, J.), dated October 19, 1981, which denied his motion for summary judgment dismissing the complaint as to him based upon the affirmative defense of the Statute of Limitations asserted in his answer, "without prejudice to defendant [Bertocchi] to assert and prove his affirmative defense." Order modified, on the law, by adding after the last word of the last paragraph thereof, the following: "except that the motion to dismiss is granted with respect to the cause of action alleging a breach of warranty, and that cause of action is dismissed as to defendant Bertocchi." As so modified, order affirmed, without costs or disbursements. In July, 1979, the female plaintiff and her husband commenced this action against her former physician, defendant Bertocchi, to recover damages resulting from the insertion into the female plaintiff of a "Majzlin Spring" intrauterine device (hereinafter IUD) in 1973. Plaintiffs also joined both the developer and the distributor of the IUD as

party defendants in the action. With respect to defendant Bertocchi, the plaintiffs' complaint alleged, *inter alia,* that he committed an act of malpractice when he inserted the IUD in December, 1973. In this regard, plaintiffs alleged that Bertocchi had inserted a type of IUD which he knew or should have known (based on available medical literature and a prior warning issued by the Federal Food and Drug Administration) had the potential of causing "multiple" and "significant" complications, "including infection, disease, cramps, bleeding [and] uterus perforation" the longer it was left in the body. Plaintiffs further alleged that "for a fee" Bertocchi "provided" the IUD and that Bertocchi committed "a breach of both express and implied warranty" with regard to the IUD. Finally, with respect to Bertocchi, plaintiffs pleaded a cause of action in strict products liability by stating that "defendants herein, without determining the adverse affects [*sic,* effects] and the damage that could and would be done to females using said intrauterine device * * * were instrumental in placing upon the market a dangerous, unsafe improper birth control device". In his answer, Bertocchi interposed an affirmative defense which alleged that the action "was instituted more than three (3) years after the cause of action alleged in the complaint accrued and is therefore barred by the Statute of Limitations." Thereafter defendant Bertocchi moved, in effect, for summary judgment dismissing the complaint as time barred. His counsel argued that the "alleged malpractice, if any, occurred at the time of the insertion of the Majzlin Spring into the body of the plaintiff", and that the action was untimely since it was instituted more than three years after the insertion of the IUD. Thereafter, Special Term denied Bertocchi's motion without prejudice to assert and prove the Statute of Limitations defense at trial. It has been consistently held that negligence actions, including those based on malpractice, and causes of actions based on strict products liability, accrue, for the purposes of the Statute of Limitations, at the time of injury (*Comstock v Wilson,* 257 NY 231, 235; *Victorson v Bock Laundry Mach. Co.,* 37 NY2d 395). The issue to be decided, then, is when did the injury occur: at the time of insertion, at the time symptoms began to develop, at the time that plaintiff discovered her malady, or at some other time? Defendant Bertocchi argues that the injury, if any, occurred at the time of insertion. He relies on a series of cases in which the courts have held that with respect to tort actions resulting from the inhalation and injection of chemicals and drugs, the injury is deemed to have occurred at the moment that the drug or chemical is introduced into the body and "not when the alleged deleterious effects of its component chemicals became apparent" (*Thornton v Roosevelt Hosp.,* 47 NY2d 780, 781; see, also, *Schmidt v Merchants Desp. Trans. Co.,* 270 NY 287; *Schwartz v Heyden Newport Chem. Corp.,* 12 NY2d 212, cert den 374 US 808; *Matter of Steinhardt v McKee,* 54 NY2d 1008). In *Lindsey v Robins Co.* (91 AD2d 150), a strict products liability cause of action was asserted by a female plaintiff against A. H. Robins Company, Inc., the manufacturer of an IUD. The IUD in *Lindsey* was inserted on March 29, 1971, and the plaintiff experienced no problems by reason of its presence until March, 1973. At that time, plaintiff developed a pelvic infection. In her action, commenced in February, 1976, the plaintiff in *Lindsey* claimed that the pelvic infection and resulting damages were caused by the fact that the IUD was defectively designed and/or manufactured. The manufacturer in *Lindsey* moved to dismiss the action on the ground that it was barred by the applicable three-year Statute of Limitations since the cause of action accrued in 1971, i.e., at the time of the insertion of the IUD. Special Term in *Lindsey* framed the issue in the following terms (p 153): " 'The question * * * is whether the Statute of Limitations began to run on the day the allegedly defective "Dalkon Shield" intrauterine device was inserted into

plaintiff Joyce Lindsey or whether the limitation of time should be measured from the onset of the injury claimed, in this case a pelvic infection.'" Special Term in *Lindsey* went on to hold for defendants and dismissed the complaint as time barred on the ground that *Thornton v Roosevelt Hosp.* (47 NY2d 780, *supra*) was controlling and that there was "'little qualitative difference between the injection of a hazardous radioactive dye, as in *Thornton,* and the introduction into the body of the allegedly defective contraceptive device'" (*Lindsey v Robins Co., supra,* p 153). In reversing Special Term and denying defendant Robins' motion to dismiss, this court in *Lindsey* held that the rationale underlying the inhalation-injection cases, viz., that the harmful substance taken into the body by inhalation or injection acts immediately upon the body and causes injury immediately, did not apply to an IUD under the circumstances of that case. Specifically, this court in *Lindsey* stated (pp 157-160): "But, that assumption is not valid or applicable to the facts of the case before us. It cannot be said that there was injury at the time of the insertion of the shield because there is no basis in reason or in the record before us upon which to predicate an assumption that any infection or disease process began immediately upon insertion of the shield. Unlike the harmful dust and chemical compounds, which were harmful in their very nature, i.e., they were the 'beasts themselves', the shield was not, in and of itself, harmful. The 'beasts' were the bacteria that availed themselves of the 'open highway' created by the shield. It is true that the alleged design defect upon which plaintiffs based their claim against Robins was present upon implantation. Nevertheless, it is only when (and if) infectious bacteria choose to follow the 'open highway' — the alleged defect in the device — created by the braided string that the shield can be characterized as having become a harmful device. Up to that point in time it was only potentially harmful. Moreover, it appears from what is before us that both the type of infection and the incubation or gestation period of the offending bacteria can be established by the plaintiffs and that it can be medically determined when the organisms entered the uterus of plaintiff Joyce Lindsey and began the infection producing process. According to the medical proof submitted, Joyce Lindsey's 'injury first occurred in the beginning of March, 1973' and 'until this occasion in March, 1973 no injury to Mrs. Lindsey occurred due the the Dalkon Shield.' Hence, as previously stated, unlike the inhalation-injection cases, it cannot be assumed here that upon insertion the shield began to set in motion the ultimate injurious effect. That being so, we conclude that the immediate injury rationale of the inhalation-injection cases distinguishes them from this matter and that said cases are not controlling in this case. Another rationale of the inhalation-injection line of cases appears to be that the 'breach of duty' owed by the defendant to the plaintiff had been completed more than three years before the actions had been commenced. In other words, after the inhalation or injection there was no nexus between the defendant and the plaintiff which caused any additional 'injury' to the plaintiff. While such reasoning may be utilized in determining the rights of one who inhales a deleterious substance or is injected with a harmful substance to pursue his rights against the party legally responsible for his injury, in our judgment it cannot be applied to a products liability case where a dormant, functioning, seemingly harmless mechanism remains in the implantee's body for some time before the defect results in injury. The fact that Joyce Lindsey's injury came about because of an 'invasion' of the body by bacteria which was allegedly facilitated by a design defect in the shield invites comparisons with the inhalation or injection of harmful substance cases. Nevertheless, in our opinion, it does not serve to make the *Schmidt-Schwartz-Thornton-Steinhardt* line of cases controlling. Manifestly,

if the shield were defectively designed in such a way that one of the spokes disengaged and punctured an organ or if its defective design enabled the braided string to entwine and constrict an organ then there would be no question as to the applicability of the general strict products liability accrual rule. In this case we see no justification for departing from the general rule stated in *Victorson v Bock Laundry Mach. Co.* (37 NY2d 395, *supra*) and reaffirmed in *Thornton v Roosevelt Hosp.* (47 NY2d 780, *supra*) simply because the shield facilitated infectious injury instead of causing direct physical injury. It must not be forgotten that we are dealing here with a product which was marketed for profit by Robins and we can perceive no sound reason why the policy behind the *Victorson* rule should not apply to such product. Because of the nature of the shield, it was hidden from view after insertion in the body. But, why should that fact start the Statute of Limitations running immediately rather than when the object causes injury? Those cases applying the general rule spelled out in *Victorson* (*supra*) distinguish between the time the allegedly defective product is placed into the mainstream of commerce and the time when the cause of action arises. The cause of action comes into being only when the product causes damage or injury, that is, upon the breakdown of the device. In our view, this case is analogous to the breakdown cases (see *Klein v Dow Corning Corp.*, 661 F2d 998, injury at a time a mammary prosthesis broke and not the date of insertion; *Murphy v St. Charles Hosp.*, 35 AD2d 64, injury at time prosthesis broke although it had been inserted years earlier). The 'breakdown' here would be at the point at which the shield's tail conducted infectious bacteria up into the uterus. The bacteria, an outside agency, caused an infection, inflaming the pelvic area, and causing plaintiff Joyce Lindsey's injury. The cause of action accrued when that injury occurred, not at some earlier date when the shield had been inserted, but had not yet had a harmful effect on Joyce Lindsey." Accordingly, this court in *Lindsey* held (p 160): "In sum we hold that an intrauterine device which facilitates infection is significantly different from dust, asbestos particles, a hazardous dye, or a thorium dioxide substance which directly and immediately act upon the body causing injury and that the date of onset of injury rather than the date of insertion is the accrual date to be used for computing the limitation of the time for bringing suit in this kind of case." The instant action was commenced in July, 1979. In her complaint the female plaintiff alleged that "in the year 1978 [she] began to experience severe radiating abdominal pain, infection, discharge and temperature so that she was admitted to Lutheran Medical Center on January 31, 1979 * * * because of the severe infection and adverse affects [*sic*] of the said Majzlin Spring Intrauterine Device". Defendant Bertocchi has not, in any way, controverted this allegation. It is reasonable to assume the injury and "damage to the plaintiff's internal organs", alleged by the female plaintiff, began to occur at or around the time that she experienced the above symptoms. Accordingly, in view of the holding in *Lindsey,* defendant Bertocchi's motion to dismiss based on the Statute of Limitations, insofar as it was addressed to the causes of action in malpractice and strict products liability, was properly denied without prejudice to his right to assert that defense at trial (see, also, *Murphy v St. Charles Hosp.*, 35 AD2d 64, 67; McLaughlin, Practice Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR 214-a, last par). In *Lindsey,* this court also noted that "if at the trial of the action the evidence establishes that the infection process, which caused Mrs. Lindsey's injury, began more than three years before the commencement of said action, then Robins will be entitled to a dismissal on Statute of Limitations grounds" (*Lindsey v Robins Co., supra,* p 160). Accordingly, defendant Bertocchi will have the same opportunity during the trial of the instant action, with respect

to the causes of action sounding in malpractice and strict products liability asserted against him by plaintiffs. However, the cause of action which alleges that Bertocchi committed "a breach of both express and implied warranty" with regard to the IUD, stands on a different footing, and should have been dismissed as time barred. A cause of action for breach of warranty, either express or implied, normally accrues at the time of sale, and pursuant to the Uniform Commercial Code would have to be brought within four years therefrom (see Uniform Commercial Code, § 2-725, subds [1], [2]; *McCarthy v Bristol Labs., Div. of Bristol-Meyers Co.,* 86 AD2d 279). Since plaintiffs allege that Bertocchi provided the IUD "for a fee" in 1973, the cause of action for breach of warranty must be dismissed as time barred. Finally, in view of the fact that the instant appeal relates solely to the timeliness of the causes of action alleged in the complaint against defendant Bertocchi, we do not express any views regarding the legal sufficiency of the remaining causes of action (see, generally, *Perlmutter v Beth David Hosp.,* 308 NY 100; *Probst v Albert Einstein Med. Center,* 82 AD2d 739; *Post v Robins Co.,* 71 AD2d 579; *Queensbury Union Free School Dist. v Walter Corp.,* 91 Misc 2d 804; Restatement, Torts 2d, § 402 A, comment *f*). Mangano, J. P., Gibbons, Thompson and Niehoff, JJ., concur.