OPINION OF THE COURT
Fred T. Santucci, J.
In this medical malpractice matter the defendant moves for dismissal based upon the failure of the plaintiff to commence the action within three years from the date of the last treatment by the defendant in 1973. The plaintiff cross-moves to dismiss the affirmative defense of Statute of Limitations.
The court is called upon to decide the following question: When a physician advises his patient that an intrauterine device (IUD), previously inserted by him, is no longer present, when in fact it is present, under what circumstances does that IUD then constitute a foreign object for Statute of Limitations’ purposes?
The plaintiff alleges that she had been a patient of the defendant, an obstetrician/gynecologist, from 1969 to 1973, and that in 1971 the defendant inserted an IUD known as Lippes Loop in the plaintiff. It apparently remained in the *854 plaintiffs body until June 5, 1981, at which time surgery was performed to remove it. Despite the insertion of the device the plaintiff became pregnant in 1972. At that time the defendant performed surgery on the plaintiff to terminate her ectopic (tubal) pregnancy. The plaintiff avers that when she inquired of the defendant about the removal of the IUD, he informed her that it was no longer present and must have been spontaneously expelled from her body. The defendant thereafter prescribed birth control pills for the plaintiff which she took for approximately one year.
Subsequent to the discontinued use of the pills, the plaintiff gave birth to two children, one born on October 7, 1975 and the other on July 20, 1978. The plaintiffs gynecological history until 1981 appears to be uneventful except for occasional vaginal discharges. The condition was swiftly cleared up by the prescription of medication by the defendant in 1973 and on later dates by other physicians. It is alleged that on June 4, 1981, the plaintiff experienced the sudden onset of severe symptoms, including diarrhea, vomitting, high fever and severe abdominal pain. On the next day the plaintiff was admitted to Cabrini Hospital. A diagnosis of "Abdomen-displaced IUD” was made and the plaintiff underwent a total hysterectomy and removal of the IUD which had perforated the uterine wall.
At the time of the last treatment of the plaintiff by the defendant in 1973, the Statute of Limitations for medical malpractice was three years from when the alleged malpractice occurred (CPLR 214 former [6]).
Exceptions to the rule were the "continuous treatment doctrine” whereby the time limit started to run from the date of the last treatment of the condition (Borgia v City of New York, 12 NY2d 151) and in those cases involving a "foreign object” in which the statute was held to run from the date the injured party discovered or reasonably could have discovered the foreign object (Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427).
Effective July 1, 1975, CPLR 214-a was enacted. The new section reduced the Statute of Limitations for medical malpractice to two years and six months from "the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure”. The "foreign object” exception carved by Flanagan v Mount Eden *855 Gen. Hosp. (supra) was codified by the 1975 revision, with the exception that the Statute of Limitations in "foreign object” cases was statutorily set at "within one year of the date of such discovery or of the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier”. (CPLR 214-a; emphasis added.) The statute further sets forth that the term " 'foreign object’ shall not include a chemical compound, fixation device or prosthetic aid or device.” (CPLR 214-a.)
The plaintiff contends that the IUD in question became a foreign object when the defendant informed the plaintiff that it had been spontaneously expelled and further, that the cause of action for medical malpractice accrued on the date of injury.
The defendant places much reliance upon Goldsmith v Howmedica, Inc. (111 AD2d 680) in which the Appellate Division, First Department, held that a prosthetic device used for total hip replacement which broke nine years after its implantation was not a foreign object and that the Statute of Limitations in a medical malpractice action based upon the malfunction of said prosthetic device began to run on the date of surgery or on the last day of treatment, not upon the date of the malfunction.
The Court of Appeals held in a products liability case that the Statute of Limitations for personal injury caused by the malfunction of a contraceptive device inserted into the human body runs from the date of the "injury-causing malfunction” and not from the date of the insertion of the device. (Lindsey v Robins Co., 60 NY2d 417.) The Appellate Division, Second Department, extended its earlier holding in Lindsey v Robins Co. (91 AD2d 150, affd 60 NY2d 417, supra) to actions sounding in medical malpractice (Reyes v Bertocchi, 92 AD2d 863).
It is the opinion of this court that the instant matter, involving a malfunctioning IUD, is closely related to Reyes v Bertocchi (supra) and distinguishable from Goldsmith v Howmedica, Inc. (supra). Thus, the court holds that the Statute of Limitations as to the malpractice alleged herein runs from the date of the injury-causing malfunction. However, issues of fact exist as to when the injury-causing malfunction actually occurred. If the said malfunction occurred before July 1, 1975, the three-year time limit set forth by CPLR 214 former (6) would be applicable to the case at bar. If the occurrence was on or after July 1, 1975, the two years and six- *856 month limitation imposed by the present CPLR 214-a would apply (Szajna v Rand, 75 AD2d 617).
Recent case law has addressed the circumstances under which an IUD may be held to constitute a foreign object as contemplated by Flanagan v Mount Eden Gen. Hosp. (supra) and CPLR 214-a. In Dunaway v Ball (116 Misc 2d 409), the IUD in question was inserted by a physician other than the defendant; however, the defendant informed the plaintiff that the device had already been spontaneously expelled or would be on the birth of her child. The court held that the injurious IUD was not a foreign object. In Ooft v City of New York (104 Misc 2d 879, mod on other grounds 80 AD2d 888) and Darragh v County of Nassau (91 Misc 2d 53, affd 63 AD2d 1010) it was held that an IUD was a foreign object when the defendant failed to remove it prior to the insertion of a second IUD.
The prescription of birth control pills, as in the instant matter, being an alternative method of contraception in place and instead of one that has failed, should be held to be no different than the implantation of a second IUD for the same purpose, as was the case in both Ooft v City of New York (supra) and Darragh v County of Nassau (supra). The fact that in Dunaway v Ball (supra), the defendant physician neither implanted the IUD in question nor prescribed an alternative or replacement method of contraception clearly distinguishes it from the case at bar in which it is claimed that the defendant took both of the aforementioned medical actions.
Accordingly, the court holds that an IUD becomes a foreign object at the time the physician informs the patient that the device has been removed or has been spontaneously expelled and prescribes another or alternative method of contraception to replace it.
The foreign object, having become such at sometime in 1972, is governed for Statute of Limitations’ purposes, by law existing at that time (Szajna v Rand, supra) to wit: CPLR 214 former (6) and Flanagan v Mount Eden Gen. Hosp. (supra) and, thus, may be brought no later than three years after the discovery of it or when it could have reasonably been discovered.
The court finds that the plaintiff’s gynecological history raises issues of fact as to when facts came to the plaintiff’s attention that would reasonably lead to the discovery of the foreign object.
Accordingly, both the motion to dismiss the action and the *857 cross motion to dismiss the affirmative defense of the Statute of Limitations are in all respects denied.