OPINION OF THE COURT
Titone, J.
Although a medical malpractice action must ordinarily be brought within 2Vi years after the act, omission or failure complained of, the time for commencing an action based on the discovery of a "foreign object” does not begin to run until the date the object was, or should have been, discovered (CPLR 214-a). This appeal requires us to consider whether a "fixation device” originally implanted in a patient’s body for a specific treatment purpose is transformed into a "foreign object” within the meaning of this rule when a physician *219 retained to remove it negligently fails to do so. We now hold that the "fixation device” does not become a "foreign object” in these circumstances and that, accordingly, plaintiffs’ complaint was properly dismissed as time barred.
According to the complaint’s allegations, plaintiff had an intrauterine device (I.U.D.) inserted into her uterus in 1980 as a birth control measure. Approximately two years later, when she and her husband decided to begin having a family, plaintiff made an appointment with defendant Manhattan Medical Group to have the I.U.D. removed. On November 5, 1982, plaintiff was examined by defendant Dr. Klein, an employee of the Group. Having failed to locate the I.U.D. during the examination, Klein ordered X rays to be taken of plaintiff’s lower abdomen. When the X rays did not disclose the presence of an I.U.D., Klein met with plaintiff on December 17, 1982 and informed her that she could attempt to conceive without the need for any further medical procedures.
Plaintiff’s efforts to become pregnant over the next 3Vi years were unsuccessful. By the spring of 1986, she was experiencing heavy vaginal bleeding, leading her to consult with a new physician, Dr. Radney. A sonogram ordered by Dr. Radney revealed the presence of an I.U.D. embedded in the uterus wall. Plaintiff ultimately had to be admitted to the hospital so that the I.U.D. could be surgically removed.
On February 19, 1987, more than four years after her last consultation with Klein, plaintiff and her husband commenced the present action against Klein and the Manhattan Medical Group, alleging that Klein had acted negligently in failing to discover the presence of the I.U.D. Defendants subsequently interposed CPLR 214-a’s 21/i-year Statute of Limitations as an affirmative defense. In response, both plaintiffs invoked the special statutory rule for "foreign objects” and argued that the limitations period on their medical malpractice claim had not begun to run until the I.U.D.’s continued presence in plaintiff’s uterus was discovered.
On cross motions to test the validity of this defense, Supreme Court rejected plaintiffs’ efforts to bring their case within the special statutory provisions for actions "based upon the discovery of a foreign object.” Holding that the I.U.D. was a "fixation device” and was therefore not a foreign object as that term is used in the statute, Supreme Court dismissed the complaint in an order that was affirmed by a closely divided Appellate Division panel. Plaintiffs then appealed to this *220 Court, as a matter of right (see, CPLR 5601 [a]), arguing that while the I.U.D. may have originally been a deliberately implanted "fixation device,” it became a "foreign object” when defendants left it in place after having been retained for the specific purpose of removing it. We now reject plaintiffs’ argument and affirm the lower courts’ dismissal of their complaint.
Traditionally, the limitations period for bringing a medical malpractice action has been held to run from the date that the last act of alleged malpractice was performed rather than from the date that the resulting injury was discovered (see, e.g., Conklin v Draper, 254 NY 620, affg 229 App Div 227). Recognizing the harshness of this rule in cases where the harm could not have been discovered before the Statute of Limitations had expired (see, e.g., Schwartz v Heyden Newport Chem. Corp., 12 NY2d 212, 219 [Desmond, Ch. J., dissenting], cert denied 374 US 808), this Court in Flanagan v Mount Eden Gen. Hosp. (24 NY2d 427) recognized a narrow exception to this rule in cases where a "foreign object,” such as surgical clamps, had accidentally been left inside the patient’s body. In such cases, the Court held, the Statute of Limitations should begin to run not from the date of the negligent act, but rather from the date on which the malpractice was, or should reasonably have been, discovered.
In support of this holding, the Court noted that the primary purpose of the Statute of Limitations, i.e., to weed out "belated, false or frivolous claims”, was not undermined by the recognition of this exception, since suits based solely on the presence of negligently implanted "foreign objects” do not "raise questions as to credibility” and do not "rest on professional diagnostic judgment or discretion.” (24 NY2d, at 431, supra.) Further, because the unremoved object in Flanagan "retain[ed] its identity” despite the passage of time, the physician’s ability to defend, which is often implicated in cases involving "stale” claims, was not "unduly impaired.” Finally, the fact that there could be no possible break in the causal chain connecting the alleged negligence to the injury supported the adoption of a "foreign object” exception to the general accrual rule (id., at 430-431).
Following the Court’s ground-breaking decision in Flanagan, several lower courts attempted to extend its analysis to cases not involving tangible paraphernalia accidentally left inside the patient’s body (see, e.g., Merced v New York City Health & *221 Hosps. Corp., 56 AD2d 553, revd 44 NY2d 398 [negligently performed tubal ligation discovered following emergency surgery for ectopic pregnancy]; Matter of Smalls v New York City Health & Hosps. Corp., 55 AD2d 537, revd 44 NY2d 398 [lesion caused by negligently performed cervical myelogram]; Dobbins v Clifford, 39 AD2d 1 [damage to pancreas during course of operation to remove spleen]; Murphy v St. Charles Hosp., 35 AD2d 64 [malfunction in surgically implanted prosthetic device]; but see, Schiffman v Hospital for Joint Diseases, 36 AD2d 31 [declining to apply Flanagan rule to erroneous diagnosis of malignancy]). In several of these decisions, the courts relied on the factors mentioned in the Flanagan opinion, notably the supposed absence of professional judgment or discretion, the lack of a possible break in the causal chain and the small danger of a false claim, and concluded that the use of a discovery accrual date was warranted even though no specific "foreign object” was involved.
Further judicial extension of the doctrine was curtailed, however, when, in 1975, the Legislature enacted CPLR 214-a and incorporated in the new statute a narrow version of the "foreign object” exception to the traditional accrual rule (L 1975, ch 109, § 6). Under the new statute, an action for medical malpractice "must be commenced within two years and six months of the act, omission or failure complained of * * * provided, however, that where the action is based upon the discovery of a foreign object in the body of the patient, the action may be commenced within one year of the date of such discovery or of the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier” (emphasis supplied). The statute specifically excludes "chemical compound[s], fixation device[s] [and] prosthetic aid[s] or device[s]” from the definition of the term "foreign object.” This exclusion was inserted specifically to overcome efforts by the intermediate appellate courts to expand Flanagan by applying it "to instances where fixation devices were inserted in a patient’s body for the purpose of treatment” (Bill Jacket, Governor’s Program Bill Mem, at 4 [hereinafter Governor’s Mem]).
Any remaining uncertainty about the reach of the Flanagan discovery rule was eliminated when this Court stated in Beary v City of Rye (44 NY2d 398, 415) that the enactment of CPLR 214-a "left * * * no room but to conclude that [the Legislature] intended that Flanagan not be broadened beyond its existing confines.” Our continuing commitment to that prem *222 ise has been reiterated on many occasions, and in several different contexts (see, e.g., Goldsmith v Howmedica, Inc., 67 NY2d 120; Martin v Edwards Labs., 60 NY2d 417; Thornton v Roosevelt Hosp., 47 NY2d 780; see also, Matter of Steinhardt v Johns-Manville Corp., 54 NY2d 1008, appeal dismissed and cert denied 456 US 967; Reis v Pfizer, Inc., 48 NY2d 664).
In light of this history, it seems clear that plaintiffs cannot prevail in their present effort to broaden the definitions of the terms used in CPLR 214-a so as to extend the "foreign object” doctrine’s applicability. The I.U.D. that prevented plaintiff from conceiving and ultimately became embedded in her uterus was originally placed in her body deliberately as a contraceptive device with a specific medical purpose. Accordingly, at least at the outset, it was a "fixation device” and not a "foreign object” within the meaning of CPLR 214-a (see, McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, C214-a:3, at 603 ["a foreign object is one that the doctor does not intend to leave inside the body”]; see also, Mitchell v Abitol, 130 AD2d 633).
Moreover, contrary to plaintiffs’ contentions, the I.U.D. did not become a "foreign object” when defendants failed to remove it after having been retained to do so. This notion of a transformation in a "fixation device’s” character resulting from a physician’s postinsertion negligence is evidently derived from a legal theory pertaining to undetected and unremoved I.U.D.s that has recently been advanced by some lower courts and commentators. Under this theory, an I.U.D. that remains in the body after it should have been removed as part of a course of treatment sought by a patient becomes, " 'or t[akes] on the character of, a "foreign object” because it then ha[s] no function to perform [and] no longer belong[s] in the body’ ” (Sternberg v Gardstein, 120 AD2d 93, 96; see, Ooft v City of New York, 80 AD2d 888; Darragh v County of Nassau, 91 Misc 2d 53, affd 63 AD2d 1010; Mayotte v Bauer, 130 Misc 2d 946; Taddeucci v Weitzner, 130 Misc 2d 853; McLaughlin, Practice Commentaries, op. cit., at 604; Carlisle, Civil Practice Survey, 39 Syracuse L Rev 75, 124-125; but cf., Szakalski v Aubry, 148 AD2d 972; Dunaway v Ball, 116 Misc 2d 409).
The theory on which plaintiffs rely, however, is flawed by its failure to appreciate the context in which the term "foreign object” was initially used to establish an exception to the general rule of accrual upon impact. In Flanagan v Mount, Eden Gen. Hosp. (supra), the patient was suing the practition *223 ers who had actually left the surgical clamps in her body and the focus of her claim was that very act. Here, in contrast, there is no claim against the physician who actually inserted the I.U.D.; instead, plaintiffs are seeking recovery from a different treating physician on the theory that his treatment of the patient in connection with the previously inserted I.U.D. was negligent. In other words, plaintiffs are not suing because a "foreign object” was negligently inserted, but rather because there was a subsequent medical omission, allegedly negligent, which caused her injuries. The "foreign object” exception first recognized in Flanagan was specifically tailored to cover only the former category of claims. It should not now be extended to apply in these very different circumstances (see, Beary v City of Rye, 44 NY2d 398, 415, supra). Indeed, the gist of plaintiffs’ claim , i.e., a negligent failure to detect the continued presence of a previously inserted device, is most logically classified as one involving misdiagnosis — a category for which the benefits of the "foreign object” discovery rule have routinely been denied (e.g., Matter of Soto v Greenpoint Hosp., 76 AD2d 928; see, Siegel, NY Prac § 42, at 44; see also, Dunaway v Ball, supra, at 410 ["foreign object” exception not applicable where defendant doctor was not involved in its implantation]).
The inapplicability of the "foreign object” exception to these circumstances is reinforced by an examination of the special analytical factors that were deemed significant in Flanagan. The claim in this case, unlike the claim in Flanagan, clearly rests on defendants’ alleged negligence in exercising "professional diagnostic judgment or discretion.” (Flanagan v Mount Eden Gen. Hosp., 24 NY2d, at 431, supra.) Further, a claim based on injuries arising from a failure to diagnose such as that asserted by plaintiffs involves a far more problematic chain of causation than one based on injuries arising from the negligent implantation of a surgical instrument or other "foreign object” (see, id., at 430). Additionally, in contrast to the Flanagan suit, actions such as plaintiffs’ do "raise questions as to credibility”, since they require the fact finder to assess conflicting evidence as to whether the defendant physician’s diagnostic methods and conclusions were consistent with contemporary professional standards of care (see, id., at 431). Thus, at least three of the elements considered important in Flanagan are lacking here. Finally, as was noted in Beary v City of Rye (44 NY2d, at 414, supra), the codification of the judicially created "foreign object” rule in CPLR 214-a *224 precludes our adoption of a more flexible discovery rule for these cases even if "considerations similar to those which motivated the court in Flanagan [c]ould be applied with like effect to the * * * different circumstances [presented here].”
In the final analysis, this case is no different from any other medical malpractice action in which it is claimed that a physician negligently failed to detect a condition within the patient’s body requiring treatment or surgical removal. Application of CPLR 214-a’s "foreign object” exception to this case would thus represent a giant step toward precisely what the statute’s drafters feared: "bringing virtually all medical malpractice cases under the discovery rule” (Bill Jacket, Governor’s Mem, op. cit., at 4). Since such a result is plainly inconsistent with the Legislature’s intentions, we are duty-bound to reject it.
Inasmuch as plaintiffs’ claim does not fall within the statutory exception for actions "based upon the discovery of a foreign object,” the limitations period began to run on or about December 17, 1982, the date that Klein allegedly told plaintiff that the I.U.D. was no longer, in her body. The present action, brought more than four years after that date, is thus untimely under the 2V£-year Statute of Limitations governing medical malpractice actions. Hence, the complaint was properly dismissed.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.