ELAINE STERNBERG, Respondent, v HENRY GARDSTEIN, Appellant.

Second Department, November 10, 1986

APPEARANCES OF COUNSEL

*Mooney, Percy & Hirshhorn, P. C. (William J. Borman* of counsel), for appellant.

*Turen & Turen (Louis G. Turen* of counsel), for respondent.

## OPINION OF THE COURT

LAWRENCE, J.

A medical malpractice action based upon the discovery of a foreign object in a patient's body accrues, and the one-year Statute of Limitations begins to run, when the object was or could reasonably have been discovered by the patient *(see,* CPLR 214-a). On this appeal we are asked to determine whether an intrauterine contraceptive device (hereinafter IUD), which the plaintiff's physician failed to remove from her body as expected by the parties during a sterilization procedure, constitutes a foreign object for the purpose of invoking the foreign object rule set forth in CPLR 214-a. We conclude that under the circumstances, the IUD is a foreign object which may warrant the application of the foreign object rule to the plaintiff's action.

I

The facts pertinent to the issue are not in dispute.

In November of 1979, an IUD was inserted into the plaintiff Elaine Sternberg by Dr. Soffer, a nonparty physician. Subsequently, on February 12, 1981, the plaintiff was seen by the defendant Dr. Henry Gardstein at his office, "at which time discussions were had regarding a surgical operation to be performed at North Shore University Hospital". The plaintiff was referred by the defendant to other nonparty physicians, who performed an ultrasound examination of the plaintiff's pelvis, which revealed that the plaintiff, in addition to being pregnant, had an IUD "in close proximity to the left wall of the gestational sac"; these findings were reported to the defendant by a letter dated February 13, 1981. The defendant thereafter discussed with the plaintiff a "surgical operation to be performed consisting of an abortion and the removal of a retained IUD". On March 2, 1981, the defendant operated on the plaintiff, performing an abortion and tubal ligation sterilization procedure. However, the defendant did not remove the IUD. The plaintiff was discharged from the hospital on the same day, March 2, 1981, and was never treated by the

defendant after that date. On August 22, 1983, the plaintiff was again admitted to North Shore University Hospital by a different nonparty physician, at which time the retained IUD was removed during another operation.

On November 1, 1983, the plaintiff commenced this action against the defendant, seeking to recover damages for personal injuries allegedly caused by, *inter alia,* the IUD, which the defendant had not removed in March of 1981.

The defendant sought dismissal of the complaint on the ground that the action was barred by the Statute of Limitations set forth in CPLR 214-a. The court denied the motion and the defendant now appeals.

## II

CPLR 214-a provides, in pertinent part, that "An action for medical * * * malpractice must be commenced within two years and six months of the act, omission or failure complained of * * * provided, however, that where the action is based upon the discovery of a foreign object in the body of the patient, the action may be commenced within one year of the date of such discovery or of the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier * * * For the purpose of this section the term 'foreign object' shall not include a chemical compound, fixation device or prosthetic aid or device."

We have previously held that the failure of a physician to remove an IUD, upon the implantation of a second IUD, presents a fact pattern appropriate for the application of the foreign object rule set forth in CPLR 214-a *(see, Darragh v County of Nassau,* 63 AD2d 1010, *affg* 91 Misc 2d 53 [Special Term, Niehoff, J.]; *Ooft v City of New York,* 80 AD2d 888).

The defendant argues that the IUD, which he failed to remove, does not constitute a "foreign object" pursuant to CPLR 214-a and the criteria set forth in *Darragh v County of Nassau (supra)* and *Ooft v City of New York (supra),* and, accordingly, the plaintiff's action accrued on the date the defendant failed to remove the IUD, thereby rendering the action time barred. We disagree.

In *Darragh v County of Nassau* (91 Misc 2d 53, *supra),* the plaintiff claimed that the employees at the Nassau County Medical Center failed to remove an IUD from her body prior to inserting a second IUD. In addressing the defendant County of Nassau's contention that an IUD was not a foreign object,

Justice Niehoff, at Special Term, stated, in pertinent part, as follows:

"While as a general rule a cause of action based upon the theory of medical malpractice accrues when the last act of malpractice is performed *(Conklin v Draper,* 254 NY 620), an exception to that rule exists in cases dealing with foreign objects wherein the cause of action accrues when the foreign object is discovered *(Flanagan v Mt. Eden Gen. Hosp.,* 24 NY2d 427) * * *

"CPLR 214-a which became effective on July 1, 1975 deals with the subject of the accrual of causes of action based upon the theory of medical malpractice and provides that the 'term "foreign object" shall not include a chemical compound, fixation device or prosthetic aid or device.' Stedman's Medical Dictionary defines fixation, in relevant part, as the 'condition of being fixed or firmly attached or set.' Inasmuch as an IUD is fixed within the woman's body it would seem to fall within the definition of a 'fixation device' and, therefore, not be classifiable as a 'foreign object' to which the *Flanagan* discovery rule applies. But, can that be said to be the case where an IUD which should be removed is left in the body and a second IUD is inserted?

"It seems to the court that CPLR 214-a was intended to exclude from the definition of 'foreign objects' such devices as are deliberately placed in the body (presumably with the patient's knowledge and consent) and are intended to be left therein for a purpose for some period of time. Where that is the case the object or device is not 'foreign'—it has been intentionally placed in the body and, in a sense, can be said to belong there by the consent of the patient. However, the court is hard pressed to perceive how two IUDs can be said to belong in the body. Stated somewhat differently, it seems to the court that when the second IUD was placed in the plaintiff's body the first IUD became, or took on the character of, a 'foreign object' because it then had no function to perform, no longer belonged in the body, and should have been removed as expected by the patient. Accordingly, it is the decision of this court that the 'foreign objects' exception is applicable to the facts of the case at bar" *(see, Darragh v County of Nassau,* 91 Misc 2d 53, 54-55, *supra; see also, Ooft v City of New York, supra).*

The defendant's attempts to distinguish the case at bar from *Darragh v County of Nassau (supra),* and *Ooft v City of New York (supra),* are meritless.

While the defendant did not insert a second IUD, nevertheless, he did provide an alternate means of contraception, by performing a sterilization procedure, during which he was to remove the plaintiff's IUD. Under these circumstances, we find that the IUD "became, or took on the character of, a 'foreign object' " indistinguishable from the IUDs which had not been removed in *Darragh v County of Nassau (supra,* at p 55) and *Ooft v City of New York (supra).*

The defendant's further claim that the plaintiff's IUD was already nonfunctional before the sterilization procedure (in that it had failed to prevent conception) is raised for the first time on appeal and is therefore not properly before this court *(see, Mastronardi v Mitchell,* 109 AD2d 825, 827-828; *Matter of Miller v Lowenberg,* 75 AD2d 620). In any event, this contention is irrelevant to the issue of the negligent *leaving* of the IUD, which "no longer belonged in the [patient's] body, and should have been removed as expected by the patient" *(Darragh v County of Nassau, supra,* at p 55). Similarly, the defendant's argument that the IUD was implanted by another physician, relying upon *Dunaway v Ball* (116 Misc 2d 409), is unavailing in light of the defendant's admissions that he knew the IUD was to be removed during the sterilization procedure.

Therefore, under the circumstances, the IUD which the defendant failed to remove from the plaintiff's body does constitute a foreign object as contemplated by CPLR 214-a and the case law and accordingly, "the plaintiff's malpractice claim accrued when the plaintiff discovered, or should have discovered, the presence of the [retained] IUD" *(see, Ooft v City of New York, supra,* at p 888).

For the foregoing reasons, the order of Special Term should be affirmed.*

BROWN, J. P., RUBIN and KOOPER, JJ., concur.

Ordered that the order of the Supreme Court, Nassau County, dated July 11, 1984, is affirmed, with costs.

---

* On this appeal, the defendant does not pursue his argument raised at Special Term that his motion to dismiss should have been granted since the plaintiff had failed to establish that the action was commenced within one year of the date when she discovered or should have discovered the presence of the retained IUD. Although Special Term stated that the action had been timely commenced within one year of the plaintiff's discovery of the defendant's failure to remove the IUD, the discovery date in this case cannot be determined on this record *(see, Ooft v City of New York,* 80 AD2d 888; *Bidetti v Salter,* 108 AD2d 890). Accordingly, dismissal of the Statute of Limitations defense is not warranted on this appeal.