[657 NYS2d 664]

PETER LaBARBERA, Appellant, v NEW YORK EYE AND EAR INFIRMARY, Defendant, and JACK M. SHAPIRO, Respondent.

First Department, May 15, 1997

## APPEARANCES OF COUNSEL

*Scott H. Greenfield* of counsel, New York City *(Andrew Lavoott Bluestone,* attorney), for appellant.

*E. Richard Rimmels, Jr.,* of counsel, Garden City *(Bruce A. Cook* on the brief; *Montfort, Healy, McGuire & Salley,* attorneys), for respondent.

## OPINION OF THE COURT

MILONAS, J.

In May 1986, defendant Dr. Jack Martin Shapiro performed a total nasal reconstruction on plaintiff at the New York Eye and Ear Infirmary to correct deformities in plaintiff's nose. At the conclusion of the operation, Dr. Shapiro packed the nasal cavity with Bacitracin gauze and inserted a silastic stent, a shaped piece of plastic, within plaintiff's nose. The purpose of the stent was to provide temporary support, promote healing and prevent scarring; after approximately 10 days the packing material and the stent were to be removed by Dr. Shapiro. At the appointed time, the packing material was removed, but the stent was not.

For the next six years, plaintiff experienced persistent nasal and respiratory problems. Neither Dr. Shapiro, whom plaintiff last contacted in September 1988, nor other doctors subsequently consulted were able to diagnose or successfully treat these complaints. Finally, in 1992, a different doctor performed an endoscopic rhinoscopy to try to determine the cause of plaintiff's persistent ailments; he discovered the presence of the stent and removed it. Plaintiff's medical problems ceased almost immediately, and, within a year, he brought this action.

CPLR 214-a provides that an action for medical malpractice "must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure; provided, however, that where the action is based upon the discovery of a foreign object in the body of the patient, the ac-

tion may be commenced within one year of the date of such discovery or of the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier. * * * For the purpose of this section the term 'foreign object' shall not include a chemical compound, fixation device or prosthetic aid or device." The IAS Court dismissed the action as untimely, concluding that the stent was a fixation device, and plaintiff therefore could not avail himself of the one year from discovery rule. The question before us is whether the stent is in fact a fixation device or whether, as plaintiff maintains, it is a foreign object, in which case the action was timely brought.

We conclude that the stent is indeed a fixation device, and we therefore affirm the order of the IAS Court. While this result is troublesome to the Court, we find that to hold otherwise would conflict with those cases in which the Court of Appeals has not only defined what constitutes a "foreign object" but also consistently cautioned against judicial extension of the foreign object exception of CPLR 214-a.

The Court of Appeals first adopted a different accrual standard for negligence cases involving foreign objects in 1969, prior to the enactment of CPLR 214-a, in *Flanagan v Mount Eden Gen. Hosp.* (24 NY2d 427), where surgical clamps were discovered in plaintiff's abdomen eight years after surgery. In such circumstances, the Court reasoned, the claim of negligence is based "solely on the presence of a foreign object," and the usual factors justifying the preclusion of late negligence claims are notably absent: there is no risk of a "belated, false or frivolous" claim; no "possible causal break" between the negligence and the injury; no issue of diagnosis, judgment or discretion; and, because an object such as a clamp retains its identity over time, no undue impairment of the ability to defend the claim (24 NY2d, *supra*, at 430-431). Absent these compelling considerations, the majority concluded, there was insufficient justification to apply the traditional rule of accrual in such instances, where it worked harsh consequences on plaintiffs who often discovered the presence of the foreign object long after the Statute of Limitations had run.

In the wake of *Flanagan,* however, some courts broadened the application of the discovery rule to encompass other circumstances so long as the underlying rationale (the *Flanagan* factors listed above) seemed to apply, notwithstanding that the case did not involve a foreign object, or indeed any object at all (*see, e.g., Murphy v St. Charles Hosp.*, 35 AD2d 64; *Merced v New York City Health & Hosps. Corp.*, 56 AD2d 553, *revd* 44

NY2d 398). In response, when the Legislature codified the foreign object discovery rule articulated in *Flanagan* and enacted CPLR 214-a, it explicitly provided that the rule was for foreign objects only and, to further limit its application only to things never meant to remain inside a patient, excluded fixation devices, chemical compounds and prosthetic aids from its purview.

That the express intent of the legislation was to curtail judicial expansion of the discovery rule is clearly stated in the Governor's Program Bill Memorandum (Bill Jacket, L 1975, ch 109, at 4), the Practice Commentaries to CPLR 214-a (Alexander, 1993 and 1991 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C214-a:3, 1997 Pocket Part, at 139, 142-143), and numerous decisions interpreting and applying the new statute (*see, e.g., Rockefeller v Moront*, 81 NY2d 560; *Rodriguez v Manhattan Med. Group*, 77 NY2d 217; *Goldsmith v Howmedica, Inc.*, 67 NY2d 120; *Matter of Beary v City of Rye*, 44 NY2d 398; *Cooper v Edinbergh*, 75 AD2d 757). Thus, even where presented with cases in which the *Flanagan* rationale for the discovery rule could be said to apply, courts refrained from extending the rule, however harsh the result, based on the Legislature's expressed intent that *Flanagan* "not be broadened beyond its existing confines" (*Matter of Beary v City of Rye*, 44 NY2d 398, 415, *supra*).

We find ourselves in precisely such circumstances. While the stent in this case was inexplicably left in plaintiff's nose, and while it is undisputed that it should have been removed within days following the surgery, it nevertheless fails to come within the "confines" of CPLR 214-a; only objects temporarily used in the course of surgery qualify as foreign objects (*Rockefeller v Moront*, 81 NY2d 560, *supra*), and a fixation device, once deliberately placed and left in a patient, cannot be transformed into a foreign object such that it comes within the discovery rule (*Rodriguez v Manhattan Med. Group*, 77 NY2d 217, *supra*).

In *Rodriguez*, a doctor retained to remove an intrauterine device (IUD) was unable to locate the device, and even X rays failed to disclose its presence. Only a sonogram taken years later detected the IUD embedded in the uterus wall. While earlier cases had held that the failure to remove an IUD transformed what was concededly a fixation device into a foreign object (*see, e.g., Sternberg v Gardstein*, 120 AD2d 93; *Ooft v City of New York*, 80 AD2d 888), the Court of Appeals rejected this analysis in *Rodriguez*. To the contrary, the Court found, an IUD deliberately placed in the patient's body with a

specific medical purpose is—and remains—a fixation device; if a doctor later fails to remove it, it does not become a foreign object within the meaning of CPLR 214-a.

The attribute on which the distinction seems to rest is whether the object was deliberately left inside the patient in the first instance. A foreign object is one that the doctor "does not intend to leave inside the body," thereby excluding by very definition, as provided by the statute, fixation devices, chemical compounds and prosthetic aids (McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C214-a:3, at 603). By way of illustration, the Court pointed to *Flanagan (supra)*, where the act complained of was leaving the clamps in the patient at the conclusion of the surgery. In contrast, a fixation device such as an IUD *is* meant to be left inside the patient, i.e., the negligence alleged does not occur when the IUD is inserted and initially left in the patient's body but relates only to the failure to remove it at some later time.

It is in this critical aspect that a stent is clearly a fixation device and not a foreign object. That the stent was intended to remain for only several days, rather than an indefinite or extended period of time, as may often be the case with fixation devices or prosthetic aids, is of no consequence. Nor is there any significance to whether the doctor who implanted the device is the one asked to remove it, or whether another doctor is retained for that purpose (*Moschetti v Saxe*, 199 AD2d 79). Once the stent was deliberately left inside plaintiff's nose to serve a medical purpose, the circumstances are "no different from any other medical malpractice action in which it is claimed that a physician negligently failed to detect a condition within the patient's body requiring treatment or surgical removal" (*Rodriguez v Manhattan Med. Group, supra*, at 224). As in *Rodriguez*, plaintiff's claim here is grounded in the "negligent failure to detect the continued presence of a previously inserted device" (*supra*, at 223).

Moreover, citing the legislative intent behind CPLR 214-a, the *Rodriguez* Court noted that even if every factor in *Flanagan* were present, CPLR 214-a clearly precluded judicial adoption of a more flexible discovery rule (*supra*, at 223-224). Indeed, the "[a]pplication of CPLR 214-a's 'foreign object' exception to this case would thus represent a giant step toward precisely what the statute's drafters feared: 'bringing virtually all medical malpractice cases under the discovery rule' (Bill Jacket, Governor's Mem, *op. cit.*, at 4)" (*supra*, at 224).

When again confronted by the issue of what constitutes a foreign object, the Court of Appeals again declined to formulate a more expansive discovery rule in *Rockefeller v Moront* (81 NY2d 560, *supra*). Focusing on the nature and function of the object left inside the patient, the Court stated that items such as surgical clamps, scalpels and sponges are foreign objects because they are "introduced into the patient's body to serve a temporary medical function for the duration of the surgery, but are normally intended to be removed after the procedure's completion" (81 NY2d 560, 564, *supra*), whereas fixation devices are items placed in the patient's body with the intention that they remain "to serve some continuing treatment purpose" (*supra,* at 564, citing *Lombardi v DeLuca*, 71 NY2d 838, *affg* 130 AD2d 632). Such items include sutures (*Lombardi v DeLuca, supra; Cooper v Edinbergh*, 75 AD2d 757, *supra*), even if made of the wrong material (*Merced v New York City Health & Hosps. Corp.*, 44 NY2d 398, *supra; Mitchell v Abitol*, 130 AD2d 633); hemoclips (small metallic devices used to control bleeding during surgery) negligently placed but deliberately left inside the patient (*Vinciguerra v Jameson*, 208 AD2d 1136, *lv denied* 86 NY2d 702); and wires affixed during oral surgery (*Provenzano v Becall*, 138 AD2d 585).

In *Rockefeller*, a suture placed on the wrong organ during surgery performed when plaintiff was a young child, rendering him sterile, was not a foreign object because it was deliberately placed and left in the body. Although the surgery predated CPLR 214-a, the Court noted that precisely the same principles applied, given that the statute had merely codified its earlier *Flanagan* decision (81 NY2d 560, 563-564, *supra*). Once again the Court noted that, despite the harsh result, its holding was consistent with its "prior cautionary directive" that the foreign object exception must not be extended (*supra,* at 566). It is instructive for our analysis here that, prior to *Rockefeller*, the Third Department had found that the hemoclips in *Vinciguerra v Jameson (supra)*, although deliberately placed and meant to be left in plaintiff, did become "foreign objects" because they were attached to the wrong organ during surgery (153 AD2d 452, 454-455). In such circumstances of a clear violation of proper medical procedure, the Third Department determined it would be "unreasonable" to hold plaintiff to the traditional accrual rule *(supra,* at 455). It is precisely this argument that was rejected in *Rockefeller*, prompting the ultimate dismissal of plaintiff Vinciguerra's claim because the hemoclips had been deliberately implanted (208 AD2d 1136, *supra*).

Given the unequivocal language used by the Court of Appeals, most recently in *Rockefeller (supra,* at 566) and *Rodriguez (supra)*, that the courts may not broaden the "narrow confines" of the foreign object discovery rule, we must reject plaintiff's contention that the stent is, in effect, a hybrid creature, that it is a fixation device for a limited period of time (i.e., the time it is intended to remain in the body), but has the capacity to become a foreign object if not removed at the conclusion of its "useful life." He asks this Court to carve an exception to the foreign object rule, to recognize a category of devices that serve a "limited" purpose, but this is clearly contrary to the case law just discussed. It also overlooks the fact that this could be said of almost all fixation devices at some point (the stent here simply having a relatively short period of usefulness). Fundamentally, then, plaintiff's rationale is no more persuasive than—or, rather, is just as persuasive as—that explicitly, if reluctantly, rejected in *Rockefeller* or *Rodriguez.*

Finally, we note that the Third Department recently addressed a similar, although not identical, issue involving the failure to remove surgical gauze as intended in the days following surgery, where the gauze had been intentionally left in the incision to aid the healing process. In dismissing the case for failure to present expert medical testimony, the Court rejected plaintiff's argument that the gauze was a foreign object and that therefore the failure to remove it alone established negligence, finding that questions of diagnosis and judgment were involved (*Delaney v Champlain Val. Physicians Hosp. Med. Ctr.*, 232 AD2d 840).

We find that the stent deliberately placed and deliberately left in plaintiff's nose is a fixation device, and that this action, having been brought more than two years and six months following plaintiff's last contact with defendant, was properly dismissed as time barred under CPLR 214-a.

Accordingly, the order of Supreme Court, New York County (Stanley Sklar, J.), entered October 20, 1995, granting defendant Jack Martin Shapiro's motion for summary judgment and dismissing plaintiff's complaint as to him as untimely, should be affirmed, without costs.

MURPHY, P. J. (dissenting). I respectfully dissent.

While the majority's analysis of CPLR 214-a is impressive, I take a somewhat different view of the salient issue on appeal.

310

Under the holding of the Court of Appeals in *Rockefeller v Moront* (81 NY2d 560, 564), several factors are crucial to a determination of whether an object which remains in a patient constitutes a "foreign object": the nature of the material implanted in the patient, the function of that material, and the nature and moment of completion of the medical procedure at issue. As the Court observed, "[o]bjects such as surgical clamps, scalpels, and sponges are introduced into the patient's body to serve a temporary medical function for the duration of the surgery, but are normally intended to be removed after the procedure's completion. Clearly, when such objects are left behind, no assessment of the medical professional's expert judgment or discretion in failing to remove them is necessary to establish negligence" (81 NY2d, *supra,* at 564). That is, although an object such as a clamp might be used to "fix" or hold stationary other objects, tissue or organs in the course of a procedure, the temporary function of such objects assures that their presence in the body following the completion of the procedure is so plainly evidence of negligence that such items are treated as foreign objects, and not as fixation devices, within the meaning of CPLR 214-a.

There is no dispute in this matter that the silastic stent here at issue was designed to maintain a bodily structure, and was intended to be left in plaintiff's nose for 10 days after the initial surgery. But there is a serious and unresolved question as to whether the surgical procedure involving the stent was "completed" at the time of its initial placement, or was merely partly finished, to be completed by the surgeon in a brief subsequent visit. This is, at the very least, a question of fact that has not been answered in the record currently before us. In my view, it is reasonable and just to conclude that a medical procedure which specifically contemplates both the insertion and, a short time later, the removal of a supporting device is incomplete until that device has been removed. Especially where competent medical practice would recognize the deleterious effect of nonremoval upon the patient, CPLR 214-a can and should be read to toll the Statute of Limitations under the foreign body exception.

The situation at bar is readily distinguishable from cases in which appellate courts have declined to extend the scope of CPLR 214-a. It does not present an instance of deliberate and permanent implantation of a device, such as a suture, in the wrong place (*Rockefeller v Moront*, 81 NY2d, *supra,* at 566; *Lombardi v DeLuca*, 71 NY2d 838; *Cooper v Edinbergh*, 75

AD2d 757), or a device otherwise deliberately installed to remain within the body for a lengthy or indeterminate period, such as an IUD (*Rodriguez v Manhattan Med. Group*, 77 NY2d 217; *Mitchell v Abitol*, 130 AD2d 633; *Vinciguerra v Jameson*, 208 AD2d 1136, *lv denied* 86 NY2d 702; *Provenzano v Becall*, 138 AD2d 585; *see also, Rockefeller v Moront*, 81 NY2d, *supra,* at 564-565, quoting *Lombardi v DeLuca*, 130 AD2d 632, *affd* 71 NY2d 838, *supra* [" '[A] fixation device, in this case, suture material, intentionally placed in the body *and not left there in the course of some later procedure in which it should have been removed,* does not constitute a "foreign object", even though the claim arose prior to July 1, 1975, the effective date of CPLR 214-a.' " (emphasis added)]). It does not involve a failure to detect the continued presence of a device previously inserted by another physician or in another procedure (*see, Rodriguez v Manhattan Med. Group*, 77 NY2d, *supra,* at 223). Finally, it does not rely upon defendant's alleged negligence in exercising professional diagnostic judgment or discretion; there is no causal break between defendant's negligence and the injury, and it cannot be argued that plaintiff's action is "feigned or frivolous" (*Flanagan v Mount Eden Gen. Hosp.*, 24 NY2d 427, 430-431). Rather, such a claim is based on a physician's failure to make certain that all temporary holding devices—clamps, temporary stents, and others—have been removed from the body at the close of a single—albeit several-stage—medical proceeding.

Moreover, I believe that an approach which recognizes several-step medical procedures is fully consistent with the Legislature's intent to place just limits on the judicially established foreign object rule (*see*, Bill Jacket, L 1975, ch 109, Governor's Program Bill Mem, at 4; *Goldsmith v Howmedica, Inc.*, 67 NY2d 120, 123; *Rodriguez v Manhattan Med. Group*, 77 NY2d, *supra,* at 221; *Rockefeller v Moront*, 81 NY2d, *supra,* at 566).

Since I see no intelligible distinction between a clamp and a stent in a multistage medical procedure, I would reverse the order of Supreme Court, and reinstate plaintiff's cause of action.

WILLIAMS, TOM and ANDRIAS, JJ., concur with MILONAS, J.; MURPHY, P. J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered October 20, 1995, affirmed, without costs and disbursements.