OPINION OF THE COURT
Alan J. Saks, J.
Motion by the defendant Victor Oelbaum, D.D.S., seeks summary judgment dismissing the complaint on the merits and also on the ground that it is barred under the statute of limitations.
Plaintiff Nicolena E. LaSorsa seeks recovery for personal injuries allegedly sustained as a result of dental malpractice committed by Oelbaum. It is not contested that, while defendant was performing root canal work on plaintiffs right front incisor (tooth number seven), the cleaning file, or “Rapid Body Shaper” (RBS), broke off.[1] The broken segment of the RBS lodged in plaintiffs gum and jaw. After unsuccessful attempts to remove the lodged piece of RBS, Oelbaum used the segment of broken file as a post upon which he affixed a crown for tooth number seven. This crowning procedure was completed on or about September 18, 1996.
It is also conceded that, between the time the RBS broke off in her jaw and September 18, 1996, upon Oelbaum’s referral, the plaintiff was examined by endodontist Dr. Elaine Rogers, who referred her to oral surgeon Dr. Carl Colacchio. It is not disputed that neither Rogers nor Colacchio was able to remove the imbedded broken metal file.
The evidence establishes that the last date on which LaSorsa was treated by Oelbaum was in August 1997. At that time, Oelbaum contends that there was no indication that LaSorsa was in dental discomfort or that she was dissatisfied with the treatment she had received.
LaSorsa began to experience discomfort and pain in her gum area late in 1999. LaSorsa testified at her deposition that, on or about December 3, 1999, she sought emergency dental treatment for a “shaky tooth” from Dr. Jeffrey Golden. Based on his observations of plaintiffs condition, Golden referred plaintiff to *378 Dr. Jeffrey Markowitz who ultimately diagnosed plaintiff with a fracture of tooth number seven. Subsequently, Golden removed the remnants of this fractured tooth, along with the crown and the makeshift post.
Plaintiff commenced this action against the defendant by filing her complaint on November 30, 2000.
Plaintiff testified at her deposition that she was aware that defendant had “put”[2] a piece of metal in her gum and jaw during the root canal process. She further testified that she was aware that Drs. Rogers and Colacchio worked on her mouth, checking the root canal work performed by the defendant and that neither of them removed the piece of metal imbedded in her jaw. She also acknowledged that she was aware of the fact that defendant used the piece of metal he “put” in her jaw as the post for the crown.
Plaintiff further attests in both her examination before trial and in her affidavit of January 27, 2003 that she was unaware, until after her treatment with Dr. Golden and Dr. Markowitz’s diagnosis of a fracture, that the use of the piece of file as a post for the crown was something “unintended,” out of the ordinary for good and accepted dental practice, or that it could pose a potential problem. She specifically states that she was never told, nor did she have reason to know, that the use of the file bit as a post for the crown would increase the possibility of fracture. Plaintiff states that she never would have agreed to the procedure as performed if she had been properly informed.
Defendant seeks dismissal of the complaint either based on its being time-barred, or, alternatively, based on summary judgment as the evidence adduced leaves no material issues of fact as to the lack of liability.
Defendant relies on the fact that the complaint was not filed by plaintiff until November 30, 2000 while the crowning of tooth number seven was completed in September of 1996. Further, it is uncontested that defendant last treated plaintiff in August 1997. Defendant contends that there is no question that more than 2V2 years elapsed between the end of his dental treatment of the plaintiff and the commencement of this action.
Defendant relies on his own affidavit and that of Dr. Leslie W Seldin, D.D.S., who opines that the care and materials used by *379 defendant in his treatment of plaintiff were within accepted standards and did not proximately cause any injury. Defendant thereby contends that the evidence adduced leaves no material issue of fact as to his lack of liability to plaintiff.
It is noted by the court that, while the Seldin affidavit indicates that she examined plaintiff on November 6, 2002, there is no indication that Seldin was in any way privy to the information given to plaintiff by either the defendant or Drs. Rogers and Colacchio at the time when the underlying dental procedure was undertaken.
Plaintiff opposes defendant’s motion and presents in support of her claim an expert’s affidavit, name of the expert redacted, who gives his opinion as a duly licensed dentist that the use of the broken RBS as a post for a crown was a departure from good and accepted dental practice. It is further opined that the cementing of the crown to the broken file was a significant contributing factor to the fracture of tooth number seven.
Plaintiff further contends that her claim is not barred by the statute of limitations, since contained within CPLR 214-a is clear language which extends the period during which suit may be commenced for one year after a foreign body is discovered within the injured party’s body or the date of discovery of facts which would reasonably lead to such a discovery, whichever is earlier. Since the action was commenced by filing on November 30, 2000 and she was not aware of the dental malpractice until it was discovered and disclosed by Dr. Golden on December 3, 1999, the action was timely instituted, plaintiff contends.
1. Timeliness of the Complaint under CPLR 214-a:
In 1975, the New York State Legislature enacted CPLR 214-a. This legislation, crafted after a significant amount of debate, contention, and compromise, codified the statute of limitations for medical, dental, and podiatric causes of action. In drafting the law, consideration was taken for cases which involved continuous treatment of the patient by the caregiver even after the alleged act of malpractice. Also considered were instances where the “injury” resulted from the presence of a “foreign” item left inside the patient by the doctor the presence of which is only discovered by the patient at a later time. The statute as last amended in 1986 reads as follows:
“§ 214-a. Action for medical, dental or podiatric malpractice to be commenced within two years and six months; exceptions
“An action for medical, dental or podiatric malprac *380 tice must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure; provided, however, that where the action is based upon the discovery of a foreign object in the body of the patient, the action may be commenced within one year of the date of such discovery or of the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier. For the purpose of this section the term ‘continuous treatment’ shall not include examinations undertaken at the request of the patient for the sole purpose of ascertaining the state of the patient’s condition. For the purpose of this section the term ‘foreign object’ shall not include a chemical compound, fixation device or prosthetic aid or device.” (Emphasis added.)
The pending matter leaves no issue that plaintiffs complaint was filed more than 21/2 years after the completion of her treatment with the defendant, but it was filed within one year of her treatment with Dr. Golden and the diagnosis of the fractured tooth seven by Dr. Markowitz. The issue, therefore, before this court is whether or not the action is timely under the “foreign body” extension of time contained in CPLR 214-a.
Before the enactment of section 214-a in 1975, medical malpractice actions were governed by the three-year period of limitations in section 214, for negligence actions in general. Under that prior law and up to the time of Flanagan v Mount Eden Gen. Hosp. (24 NY2d 427, 431 [1969]) no distinction was made for foreign object cases. Flanagan created a common-law discovery rule for them, with the period of limitations to commence when “the patient could have reasonably discovered the malpractice” (at 431 [emphasis added]). In enacting section 214-a the Legislature reduced the general statute from three years to two years and six months, established the continuous treatment rule, and codified Flanagan, but in modified form in that it put a one-year limitation on the extension, and rather than starting the extended period when the patient could have reasonably discovered the malpractice, it started the period at the earlier of the time when the patient either discovered the foreign object or discovered facts which would have reasonably lead to discovery of the foreign object.
Garrett v Brooklyn Hosp. (99 AD2d 541 [2d Dept 1984]) was a case in which the salient facts occurred between a time that *381 predated the decision in Flanagan and postdated the enactment of section 214-a. Just prior to age seven, plaintiff received surgery at defendant hospital for injuries caused by her hand having been cut by glass. That occurred in October 1964. Post-surgery, a piece of glass remained in her hand. The action was commenced in September 1980. Supreme Court, Kings County (Cooperman, J.), held (115 Misc 2d 933 [1982]) that the action was governed by the three-year statute that predated section 214-a, which would not expire until three years after plaintiff ceased to be an infant, that is, not until around October 1978, absent extension by the Flanagan common-law rule. Plaintiff alleged that in 1980 she discovered a knot in the scar area, had it x-rayed, and had the glass removed surgically. The Second Department held that it was not a foreign object under the amendment, principally because it had not been introduced into the plaintiffs body by the defendant.
Obviously, Garrett is distinguishable from the instant case in which the metal object was introduced into plaintiffs body during defendant’s treatment, although not initially for dental purposes but purely accidentally. And though it was subsequently mobilized by defendant for use as a post, that was a decision defendant made only after his attempts to remove it himself and to have it removed by other dentists had failed. The court is not persuaded that such making the best of a bad situation converted the broken metal into a nonforeign body or a fixation device. This situation is in no way analogous to the reverse conversion of an IUD from a nonforeign object to a foreign object, by neglecting to remove it. And, the object was not inserted into plaintiffs mouth to serve as a fixation device.
Recently, the Appellate Division, First Department, in Newman v Keuhnelian (248 AD2d 258 [1998]), a case involving injury allegedly caused by the negligent failure to remove a catheter postoperative procedure, reviewed the law as had developed on the issue of “foreign object,” as that term is meant in CPLR 214-a. Determining that the suit was not timely commenced, the Court stated in pertinent part (at 260):
“The catheter was not a ‘foreign object’ inadvertently left in plaintiffs body sufficient to delay accrual of the Statute of Limitations until the date the object was discovered or reasonably should have been discovered (Rockefeller v Moront, 81 NY2d 560). Rather, the catheter was a fixation device (see, LaBarbera v New York Eye & Ear Infirmary, 230 *382 AD2d 303, 306, affd 91 NY2d 207 [stent placed in nasal passage was fixation device, even if ‘inexplicably left in plaintiff’s nose’]) and fixation devices specifically are excluded from the tolling provisions of CPLR 214-a. The distinction between a ‘foreign object’ that will toll the statute and a fixation device, for which the action accrues with the last act of negligence or malpractice, is that a fixation device is intentionally implanted, even if negligently left inside, whereas a foreign object is negligently left inside the patient during surgery and its continued presence serves no medical purpose (Rockefeller v Moront, supra; LaBarbera v New York Eye & Ear Infirmary, supra; Delaney v Champlain Val. Physicians Hosp. Med. Ctr., 232 AD2d 840). A fixation device cannot be transformed into a foreign object merely because the continued presence of the fixation device is inadvertent (Rodriguez v Manhattan Med. Group, 77 NY2d 217). Since the catheter is a fixation device rather than a foreign object, the two and one half year medical malpractice Statute of Limitations, commencing with the act, omission or failure complained of, applies (CPLR 214-a), and in this case requires dismissal.” (Emphasis added.)
In the present matter, defendant contends that, since plaintiff conceded that she was aware that he had “put” a piece of metal file in her jaw during the root canal process and had subsequently used that broken file as the post for the crown placed on her tooth, number seven, there is no issue that the broken piece of metal file cannot be viewed as a “foreign object” as to give her the benefit of the “one year after discovery” clause of CPLR 214-a.
Defendant further relies on the fact that, prior to his completing the crowning of her tooth, plaintiff had been examined by Drs. Rogers and Colacchio, who had examined the defendant’s root canal work, broken file still fixed into plaintiffs gum and jaw. Accordingly, the defendant argues that the broken file, much like the catheter left behind by the doctor in Newman v Keuhnelian (supra), is not a “foreign object”; hence, the “one-year after discovery” rule will not apply, and the suit must be dismissed as untimely.
Plaintiff counters by contending that, while she was aware of the metal piece “put” into her jaw by the defendant, she was not aware that this was out of the norm of good dental practice; *383 or, that the broken BBS, so implanted, could pose a problem to her future dental health or even contribute to the fracture of her tooth.
Based on the evidence adduced, and the law as presently stated, this court determines that the broken file constituted a “foreign body.”
In making this ruling, the court specifically finds that neither defendant, nor his expert Dr. Seldin, has stated or even alleged that it was the defendant dentist’s intent to break off the metal file in the plaintiffs jaw; hence, there is no evidence that the defendant intentionally implanted the broken bit of metal in plaintiffs tooth. As such, under the clear language used in Newman v Keuhnelian (supra), the court finds that, unlike the catheter in Newman, the broken file the defendant left in the plaintiff is a “foreign body” for the purposes of CPLR 214-a. Additionally, the court finds that, despite the fact that the broken file was used by the defendant as a post for plaintiffs crown, it is not persuaded by defendant’s evidence that the broken off bit of dental file thereby became a valid “fixation device,” as envisioned by the Court in Newman, so to disqualify plaintiff from the benefit of the extension of time for “foreign body” injuries contained in CPLR 214-a.
However, the court further determines that the one-year extension afforded by section 214-a for foreign objects has long since expired.
The trouble with plaintiffs argument that it did not begin to run until she discovered the dental impropriety of leaving the broken piece in her mouth as a crown post is that, while that might have been the appropriate starting point after Flanagan was decided but before the enactment of section 214-a, it is not the appropriate starting point under that statute. It must be remembered that plaintiff was treated as a competent adult. The evidence militates overwhelmingly in favor of the conclusion that she learned that a broken piece of metal had been left in her mouth in September 1996, when defendant referred her to endodontist Rogers and oral surgeon Colacchio to see if they could remove it, before he did the crowning procedure. And, even if there had been an issue of fact as to whether she had become actually aware then that the metal object was in fact a foreign one, she had certainly discovered facts which would have reasonably led to her discovery that there was a foreign object present. What she had discovered then was, at a minimum, that something had gone wrong during the root canal *384 work and before the crowning procedure, and that that mishap resulted in defendant’s referring her to two dental specialists to see if they could address the problem. Even if one assumes that neither the defendant nor either of the specialists told her a piece of device had broken off and lodged in her gum and jaw bone, she had made a sufficient factual discovery to lead a reasonable person, before the crowning work was done, to seek evaluation from a dentist of her own choosing, which would in all probability have lead to the discovery and identification of the offending object.
Accordingly, that prong of defendant’s motion to dismiss which is predicated on the statute of limitations is granted and the complaint is hereby dismissed as time-barred.
In view of the court’s above decision, it is not necessary to reach the alternative prong of defendant’s motion.

. Defendant indicates that his records concerning his treatment of plaintiff show that the file broke off in plaintiffs jaw on August 28, 1996 (see defendant’s exhibit E), while plaintiffs complaint claims that the mishap occurred to her on or about September 7, 1996.

. Plaintiff uses the word “put” in her testimony to explain her understanding of the events that occurred during her root canal procedure with the defendant.