OPINION OF THE COURT
John M. Curran, J.
Defendants move to dismiss pursuant to CPLR 3211 (a) (5) asserting that the action may not be maintained because the statute of limitations expired before the action was commenced on November 24, 2009. Defendants claim that the statute of limitations expired on May 30, 1996, pursuant to CPLR 208. Plaintiff argues that the action was timely commenced under the “foreign object” discovery rule codified in CPLR 214-a.
Facts
On May 27, 1986, plaintiff, who was then three years old, underwent surgical repair of his heart by defendants Stewart and Knight at Strong Memorial Hospital. The operative note from the surgery states that “polyvinyl catheters were placed within the left atrium and right atrium for recording atrial pressure” (exhibit D to affirmation of William P Brady, Esq., sworn Mar. 14, 2012 [Brady affirmation]). Additionally, myocardial pacing wires were placed upon the right atrium and right ventricle for pacing, and two pericardial drainage tubes were placed, anteriorly and posteriorly (exhibit D to Brady affirmation). According to the expert affidavit submitted by plaintiff:
“These catheters are placed to permit monitoring of arterial and venous pressures for management of fluid replacement, blood pressure, and prevention *541 and/or treatment of congestive heart failure, such that adjustments can be made as necessary to maintain the hemodynamic stability necessary to prevent death and/or organ failure, which are recognized complications of this type of surgery.” (Plaintiffs expert aff U 3.)
Three days later, on May 30, 1986, defendant Appenfeller ordered that the aforementioned polyvinyl catheters and myocardial pacing wires, as well as the pericardial drainage tubes, be disconnected. The nursing progress note reflecting such removal states: “LA [left atrial] line possibly broke off with a portion remaining in pt” (exhibit E to Brady affirmation).
On March 2, 2003, while visiting the City of Boston, plaintiff, then 19 years old, presented to Boston Medical Center with complaints of double vision, difficulty in walking and lightheadedness secondary to an inability to see. On March 3, 2003, plaintiff underwent a transesophageal echocardiogram which documented “small mobile filamentous masses seen on the right and left side via atrioseptum, which may represent suture material but could not rule out clot.” On that date, it was determined that plaintiff had suffered an embolic stroke. On March 11, 2003, a neuropsychology consultation indicated that plaintiffs cognitive function was characterized by mild and selective deficits in verbal and visual-spacial memory, visual organization and higher cognitive function (Brady affirmation 1i 10; exhibit F to Brady affirmation; plaintiffs expert aff 1i 8).
On December 2, 2008, plaintiff went to the emergency room at Vanderbilt University Medical Center complaining of blurred vision, left eye weakness, right arm weakness and a right facial droop. Plaintiff was then diagnosed as having suffered a transient ischemic attack (as he also was noted to have done in July of 2008), and a decision was made to replace his pacemaker battery (plaintiff had undergone surgery to insert a pacemaker in April of 2001). On December 4, 2008, plaintiff underwent a pacemaker generator replacement and the echocardiogram revealed a linear density that appeared to course from the superior venacava across the atrial septum into the left atrium (Brady affirmation II 11; exhibit F to Brady affirmation; plaintiffs expert aff 11 9).
On December 18, 2008, plaintiff underwent surgery at Vanderbilt University Medical Center to remove a 13 cm portion of catheter which is alleged to have been left behind following the surgery and subsequent removal procedure performed at Strong *542 Memorial Hospital in May of 1986. The operative report from Vanderbilt University Medical Center states:
“The left atrium was examined; 13 cm loop of plastic tubing approximately 5-French in caliber was seen adherent to several areas within the atrium and looping around the perimeter of the atrium. There was an apparent exit site near the right upper pulmonary vein and the foreign body and its associated neointima were removed in its entirety with the extension somewhat of the atrial septal defect to excise an area where it appeared to be pexed to the atrium septum.” (Exhibit G to Brady affirmation.)
According to the same operative report, the preoperative and postoperative diagnoses were primarily the same: “left atrial foreign body, status post-cerebro vascular accident x2” (exhibit G to Brady affirmation). The operative note further states that the operation was primarily for: “removal of left atrial foreign body, 13 cm intra cardiac line fragment” (exhibit G to Brady affirmation). Both the discharge summary and the pathology report from Vanderbilt University Medical Center confirm the diagnosis of a “foreign body” (exhibits D, E to plaintiffs expert aff). The pathology report refers to a “left atrial line” and to a “catheter.” The specimen was photographed and stored in the medicolegal file (exhibit E to plaintiffs expert aff).
Procedural History
This action was commenced for medical malpractice on November 24, 2009. It was commenced within one year of the discovery of the piece of catheter. The complaint alleges that defendants were negligent in leaving a piece of catheter in the left atrium of the plaintiffs heart after removal was attempted on May 30, 1986.
The verified bill of particulars, served in September of 2010, alleges that the injury to the plaintiff was caused by a foreign object, specifically the atrial catheter which was left in the left and/or right atrium of plaintiffs heart on May 30, 1986. According to plaintiffs expert, “the failure to remove this catheter was, to a reasonable degree of medical certainty, the cause of the embolic stroke in [plaintiffs] brain stem that occurred in March of 2003, as well as other embolic sequella” (plaintiffs expert aff H 10).
Defendants served their motion to dismiss under CPLR 3211 (a) (5) in March of 2012. Oral argument was conducted on June 7, 2012, and decision was reserved.
*543 Parties’ Contentions
Defendants contend that the catheter is a “fixation device” expressly exempted from the “foreign object” discovery rule set forth in CPLR 214-a. Defendants rely on Court of Appeals authority to assert that, because the catheter in this case was intentionally placed for a purpose that extended beyond the procedure which occurred on May 27, 1986, it is a “fixation device” as a matter of law.
Plaintiff asserts that the Court of Appeals cases upon which defendants rely are distinguishable from the situation here. Plaintiff argues that the catheter cannot be a “fixation device” under law because, in fact, it served no “fixative” function and does not fit any legal, technical or common sense definition of the term “fixation device.” According to plaintiff, because the broken catheter provided no benefit to him, it is, as the physicians at Vanderbilt University Medical Center termed it, a “foreign body.”
Discussion
In Flanagan v Mount Eden Gen. Hosp. (24 NY2d 427 [1969]), the Court of Appeals adopted a discovery rule for medical malpractice actions involving foreign objects. Flanagan involved surgical clamps inserted during gall bladder surgery which were inadvertently left in the plaintiff’s body and not discovered until eight years later when plaintiff experienced severe abdominal pain. The Court held that the statute of limitations did not begin to run until the patient could have reasonably discovered the malpractice relating to the foreign object left in the patient’s body (24 NY2d at 431). The Court adopted this accrual standard for such cases by recognizing the difference “between negligent medical treatment and medication cases and cases involving negligent malpractice of physicians or hospitals in which a foreign object is left in a patient’s body” (24 NY2d at 430).
In 1975, the legislature adopted a bill which amended provisions of various New York statutes: “[t]o deal comprehensively with the critical threat to the health and welfare of the State by way of diminished delivery of health care services as a result of the lack of adequate medical malpractice insurance coverage at reasonable rates” (Governor’s Program Bill Mem at 1, Bill Jacket, L 1975, ch 109). In addition to shortening the statute of limitations for medical malpractice actions from three years to 2V2 years, the bill also codified a discovery rule for “foreign *544 objects” which authorizes commencement of a medical malpractice action involving a “foreign object in the body of the patient” to be commenced “within one year of the date of such discovery or of the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier” (CPLR 214-a).
The codification of the “foreign object” discovery rule was enacted in the wake of Flanagan and to “correct” perceived “abuses” by intermediate appellate courts in broadening the discovery rule for “foreign object” actions. Examples of such “abuses” were “where fixation devices were inserted in a patient’s body for the purpose of treatment and to chemicals introduced in the body for the purpose of treatment” (Governor’s Program Bill Mem at 4, Bill Jacket, L 1975, ch 109). Accordingly, the codification of the discovery rule with respect to “foreign objects” also provided express exclusion for cases involving “a chemical compound, fixation device or prosthetic aid or device” (CPLR 214-a). Interestingly, in April of 1975, the New York State Bar Association supported the amendments to CPLR 214-a but made the suggestion “that the modification relating to the extension of time for the discovery of foreign objects be clarified” (Legislation Rep at 1, Bill Jacket, L 1975, ch 109).
In its first opportunity to address the legislative changes pertaining to medical malpractice actions, the Court of Appeals decided Matter of Beary v City of Rye (44 NY2d 398 [1978]). One of the cases addressed by the Court in Beary involved a sterilization operation where it was discovered two years later during emergency surgery for an ectopic pregnancy that one of the plaintiffs fallopian tubes had not been sutured. The claimant there urged the Court to allow reliance on the “foreign object” discovery rule. In rejecting that claim, the Court referred to the enactment of CPLR 214-a as “having clearly interdicted the extension of the ‘foreign object’ exception” (44 NY2d at 414-415). The Court concluded that “the Legislature left us no room but to conclude that it intended that Flanagan not be broadened beyond its existing confines (L 1975, Ch 109, § 6)” (44 NY2d at 415).
Since Beary, the Court of Appeals has decided a number of “foreign object” cases (Rodriguez v Manhattan Med. Group, 77 NY2d 217 [1990]; Rockefeller v Moront, 81 NY2d 560 [1993]; LaBarbera v New York Eye & Ear Infirmary, 91 NY2d 207 [1998]).
LaBarbera is not only the Court’s most recent pronouncement on the subject but it also is most pertinent here. In La *545 Barbera, the defendant doctor performed a nasal reconstruction on plaintiff and, at the conclusion of the procedure, the doctor packed the nasal cavity with gauze and inserted a silastic stent, a shaped piece of plastic, within plaintiff’s nose. The packing material and the stent were expected to be removed by the defendant approximately 10 days after the surgery. At the appointed time, the packing material was removed, but the stent was not. It was undisputed in LaBarbera that the stent was inadvertently left behind.
Plaintiff suffered persistent nasal and respiratory problems for the next six years. A different doctor discovered the stent and removed it at that time. Plaintiff commenced the action against the defendant doctor within one year of the discovery and extraction of the stent.
The trial court in LaBarbera granted defendant’s motion for summary judgment on statute of limitations grounds by concluding that the stent was a “fixation device” under CPLR 214-a. The Appellate Division, First Department, addressed the question of “whether the stent is in fact a fixation device or whether, as plaintiff maintains, it is a foreign object” (230 AD2d 303, 305 [1997]). The Appellate Division discussed all of the pertinent Court of Appeals authority as well as the legislative intent underlying the codification of the discovery rule for “foreign object” cases. The Appellate Division concluded that “the stent deliberately placed and deliberately left in plaintiffs nose is a fixation device” (230 AD2d at 309). The Court found that “the attribute on which the distinction seems to rest is whether the object was deliberately left inside the patient in the first instance” (230 AD2d at 307). Further, the Court concluded that the critical aspect making the stent a “fixation device” and not a “foreign object” was that it “was deliberately left inside plaintiffs nose to serve a medical purpose” (230 AD2d at 307).
First Department then-Presiding Justice Francis T. Murphy dissented concluding that he saw “no intelligible distinction between a clamp [as in Flanagan] and a stent in a multistage medical procedure” (230 AD2d at 311). Justice Murphy further opined that “an approach which recognizes several-step medical procedures is fully consistent with the Legislature’s intent to place just limits on the judicially established foreign object rule.” (Id.)
The First Department granted permission to appeal in LaBarbera by posing the following certified question: “Was the order of the Supreme Court, as affirmed by this Court, properly *546 made?” The Court of Appeals answered the certified question in the affirmative in its LaBarbera decision. The Court also reiterated Rockefeller’s holding that a foreign object is one that is “negligently ‘left’ in the patient’s body without any intended continuing treatment purpose” (91 NY2d at 212 [emphasis omitted], quoting Rockefeller v Moront, 81 NY2d at 566). On this basis, the Court concluded that the stent did not come within the “foreign object” category:
“Unquestionably, it was implanted with an intentional continuing treatment objective. Even in the vernacular, it cannot be said to have been ‘left’ in plaintiffs nose. Rather, it was put there only to be removed after it had served its postsurgery healing purposes. The time frame was to be relatively short and conditionally fixed, but the key feature is the uncontroverted protocol of insertion as part of a continuing treatment modality. Thus, it may be an ‘object,’ but it is not ‘foreign’ and not ‘left behind,’ in any medical or legal senses.” (91 NY2d at 212-213.)
Defendants rely mostly on the language in Rodriguez and Rockefeller to argue that the catheter here is a “fixation device” solely because it was an object deliberately placed in plaintiffs body to serve a specific medical purpose. However, this court agrees with plaintiff that Rodriguez and Rockefeller are factually distinguishable from this case.
The Court of Appeals in Rodriguez dealt with an IUD which had been placed by one doctor and was left in the patient’s body undetected years later by a second doctor. The Court there concluded that this was a misdiagnosis by the second doctor and not an instance of leaving a “foreign object” in the patient’s body. Unlike the situation here, there was no claim against the doctor who initially inserted the IUD. Additionally, in Rodriguez, the argument as framed by plaintiff appears to have conceded that the IUD was originally a “fixation device” (77 NY2d at 220).
In Rockefeller, the Court dealt with a patient who, while very young, was sutured in such a way as to cause sterilization. In that case, the Court recognized that
“[s]utures have been consistently characterized in decisional law as ‘fixation devices’ because they are deliberately introduced into the body and intended to perform the continuing function of securing the *547 surgical closure (see, e.g., Lombardi v DeLuca, 71 NY2d 838, affg 130 AD2d 632, supra; Cooper v Edinbergh, 75 AD2d 757).” (81 NY2d at 566.)
Moreover, Rockefeller involved a doctor’s negligence in improperly attaching an “object” to the wrong organ and not just negligently leaving it behind.
Here, the defendants are the ones who are alleged to have left the catheter behind. In addition, defendants make no argument that the catheter provided any securing function. These factual distinctions cause this court to conclude that Rodriguez and Rockefeller are not controlling authority on the question of whether the catheter here is a “fixation device” subject to the exception from the discovery rule under CPLR 214-a.
Defendants also characterize the Court of Appeals decisions in LaBarbera, Rockefeller and Rodriguez as compelling the conclusion that the catheter here is a “fixation device” as a matter of law. In support of this argument, defendants rely on the Appellate Division’s decision in Newman v Keuhnelian (248 AD2d 258, 259 [1st Dept 1998], lv denied 92 NY2d 804 [1998] [“Foley” catheter inserted for the purpose of fixing the position of the urethra is a “fixation device” because it was intentionally implanted]).
To be sure, the language used by the courts in these cases lends support to defendants’ position. The Court of Appeals in Rockefeller stated: “items which are placed in the patient with the intention that they will remain to serve some continuing treatment purpose constitute ‘fixation devices’ ” (81 NY2d at 564). In support of this statement, however, the Court, as noted above, relied on suture cases where the sutures provided some “continuing function of securing the surgical closure” (81 NY2d at 566).
It makes sense to refer to suture cases as ones involving “fixation devices” because sutures serve some fixation purpose. It makes no sense, however, to refer to the catheter here as a “fixation device” because it served no such purpose and was never intended to do so.
This court disagrees with defendants’ argument that the decisions upon which they rely must be read as concluding that an object, irrespective of its nature or purpose, is always a “fixation device” so long as it was intended to serve some continuing treatment purpose after the procedure in which it was placed in the body has concluded. The Governor’s Program Bill Memorandum targeted for correction cases “where fixation devices *548 were inserted in a patient’s body for the purpose of treatment.” This does not mean that every object, irrespective of its nature or function, is a “fixation device” just because it was inserted to serve a continuing treatment purpose. More significantly, the language of the statute does not so provide. Instead, it refers to a “fixation device” without any legislative definition. The statute also does not contain language excepting from the “foreign object” discovery rule “any object intentionally placed in the patient’s body for a continuing treatment purpose.” This language could have been readily included in the statute by the legislature but it did not do so.
Furthermore, it is critical to note that it is an exception to the discovery rule that is being construed. Exceptions to statutes are to be construed strictly and only insofar as their language allows (McKinney’s Cons Laws of NY, Book 1, Statutes § 213). The term “fixation device” should therefore not be construed to encompass an object which does not meet the term’s “commonly understood meaning” (Statutes § 232). When seeking such meaning, courts are directed to employ the “natural and most obvious sense” of the language used in the statute (Statutes § 94) or, if appropriate, construe language in its “technical sense” (Statutes § 233). Resort to “[dictionary definitions” also may be “useful” (Statutes § 234).
The catheter here does not fit the concept of a “fixation device” under any commonly understood meaning or technical sense. It served no fixative or fixation purpose. Its nature is not one which closes or fixates anything within a patient’s body. The affidavit from plaintiffs expert further confirms the futility of attempting to characterize this catheter as a “fixation device” (see also Torres v Hyun Talk Cho, 2011 NY Slip Op 31183[U], *6 [Sup Ct, NY County 2011] [referring to an online medical dictionary and an expert affidavit for a definition of a “fixation device”]). In this court’s view, the credibility of the judiciary should not be sacrificed by referring to an object as something which it is clearly not. To do so is to “enter the forbidden realm of judicial legislating” (Matter of Jewish Home & Infirmary of Rochester v Commissioner of N.Y. State Dept. of Health, 84 NY2d 252, 264 [1994]).
For all these reasons, the court rejects defendants’ fundamental argument that the catheter is a “fixation device.” Nevertheless, the court must still consider whether the catheter, under the decisional law from the Court of Appeals, is a “foreign object.”
*549 As with the term “fixation device,” the legislature did not define the term “foreign object.” In turning to the technical or most commonly understood definition of “foreign object,” the Court could simply rely on the phraseology used by the medical personnel at the Vanderbilt University Medical Center, all of whom referred to this catheter as a “foreign body.” This is confirmed by the interpretation attributed to the phrase “foreign object” by the plaintiffs expert. This view also is consistent with another state’s construction of similar facts (see Abend v Klaudt, 243 Ga App 271, 531 SE2d 722 [2000]). Still, this court is obligated to follow the precedent established by the Court of Appeals.
The first question is whether the catheter was negligently left in the plaintiffs body. As of May 30, 1986, the answer must be in the affirmative. The next question is, as of May 30, 1986, did the catheter serve any continuing medical purpose. The answer to that is in the negative. However, based on LaBarbera, the “first instance” of the “continuing treatment modality” wherein the catheter was left in the plaintiffs body was on May 27, 1986 (91 NY2d at 209, 212-213). According to LaBarbera, the catheter is thereafter ineligible for consideration as a “foreign object.” Therefore, within the confines of the decision in LaBarbera, this court is compelled to conclude that the catheter here is not a “foreign object” because, in the first instance, it was left in the plaintiffs body deliberately with a continuing medical purpose.
This court is concerned whether this is the proper legal conclusion. This statement has nothing to do with the concerns expressed in Rockefeller and LaBarbera about a harsh result for the plaintiff. Rather, the concern is whether this is a proper legal construction of the statute.
In reading into the definition of the term “foreign object” the concept that it can only pertain to a procedure in the “first instance” of “a continuing treatment modality,” the Court of Appeals has defined the term “foreign object” without any legislative guidance or any reference to a technical or commonly understood meaning of the term. The Court instead appears to speculate as to what the legislature intended and it did so with very scant evidence of legislative intent.
Restricting the “foreign object” discovery rule to a single procedure or the first of a “continuing treatment modality” changes the fundamental concept of a “foreign object” without any clear legislative guidance. The courts should not interpret *550 specific statutory terms based solely on a policy generally embodied in a statute and in so doing disregard their technical or commonly understood meaning.
This court agrees with the dissent by Justice Murphy in LaBarbera that there is “no intelligible distinction” among the foreign objects in Flanagan, LaBarbera and here. It is respectfully submitted that LaBarbera crafted a difference in the judicial definition of a “foreign object” when in fact there was no distinction.
Nevertheless, the court is required to follow its understanding of the holding in LaBarbera. For that reason, the motion to dismiss must be granted. If the court did not feel so compelled to follow LaBarbera, it would deny the motion to dismiss only with respect to injuries claimed which are causally related to leaving the catheter in the plaintiffs body on May 30, 1986. The motion to dismiss would be granted as to the allegations in the bill of particulars pertaining to the insertion of the catheter as well as the failure to diagnose and properly remedy the situation of having left the catheter behind in plaintiffs body. The record is unclear as to which defendants would be entitled to dismissal on those grounds.
For all of these reasons, the motion to dismiss is granted.